**CONLEY v. CONLEY.**

No. 6039.

Court of Civil Appeals of Texas. Amarillo.

March 20, 1950.

Rehearing Denied April 24, 1950.

Jim W. Sowell, Quanah, for appellant.

O. L. Bell, Quanah, for appellee.

PITTS, Chief Justice.

This is an appeal from an order sustaining a motion to correct a judgment by nunc pro tunc proceeding. The record reveals that on or about November 1, 1947, appellant, Cleva Merle Conley, and appellee, Eugene Gordon Conley, were married when they were both quite young. One child, Charles Gordon Conley, was born to the marriage the latter part of 1948. The parties separated in March of 1949 and appellant soon thereafter filed her petition for a divorce and sought custody of the minor child together with proper orders made for its support. Appellee accepted service and waived the issuance of such in writing subscribed and sworn to. However, the trial court, finding appellee to be a minor under 21 years of age, appointed Honorable O. L. Bell, a practicing attorney, guardian ad litem to represent appellee. Through his attorney and guardian ad litem appellee filed an answer in the divorce action in which the marriage, separation and birth of the child were admitted and he agreed for appellant to have custody of the minor child in case a divorce was granted but he otherwise denied appellant's allegations. The trial judge, Honorable C. Y. Welch, who later died, tried the divorce action on May 27, 1949, at which trial Honorable Jim W. Sowell represented plaintiff who is appellant in this action. The record reveals that the attorneys who represented the parties, respectively, in the original suit are likewise representing the same parties in the action at bar and that both attorneys testified in the trial of this action. In the divorce action defendant, who is appellee here, appeared only by and through his attorney and guardian ad litem. As a result of that hearing Cleva Merle Conley was granted a divorce, full custody of the minor child with provisions made for its father to pay into the registry of the court $40.00 per month for its support. The trial court's judgment further provided for visiting privileges of the child by its father, appellee in this action, between 8:00 o'clock a. m. and 6:00 o'clock p. m. on the first and third Saturdays of each month so long as the child remained in Hardeman County and for such visiting privileges of the child by its father between the same hours on the first and third Saturdays and Sundays of each month if the said child be permanently removed from Hardeman County. The issues presented in the action at bar grew out of the question of visiting privileges of the child as authorized by the trial court's original judgment.

The record reveals that the divorce judgment was entered at the May term of the court in 1949 and that such term of court expired on June 4 thereafter. Judge C. Y. Welch, who heard the divorce action, died on August 12, 1949, and he was succeeded immediately thereafter by Honorable Jesse Owens, who heard the action at bar. At a subsequent term of the court, on September 19, 1949, after he had become 21 years of age on September 4, 1949, appellee filed a motion in his own right, alleging, in effect, that the trial judge, C. Y. Welch, then deceased, had inadvertently entered his order permitting the father of the child to visit it as heretofore set out when such judge intended at the time to permit the father, Eugene Gordon Conley, or his father or mother, who are the paternal grandparents of the child, to have custody of the child during the hours set forth in the judgment and to give either of such three people the right to have actual physical control of the said child during such hours, for which reasons he prayed that the trial court, after proper notice of such a hearing, enter a nunc pro tunc order changing the original judgment so as to award custody of the said child to appellee, Eugene Gordon Conley, or his father or his mother for such designated hours as were set forth in the original judgment in order to reflect the truth and justice as contemplated by the trial judge, C. Y. Welch, now deceased. Appellant, Cleva Merle Conley, as respondent answered with special exceptions and challenged the jurisdiction of the trial court on the grounds

that the motion was filed to be heard at a subsequent term of the court and further pleaded that appellee, as petitioner, had not alleged or pleaded that a judgment different from the one signed by the trial judge, C. Y. Welch, now deceased, had been in any way rendered or pronounced by the said trial judge as a result of the divorce hearing. She further pleaded, in effect, that any alleged error pleaded by appellee was a judicial error and not a clerical error; that appellee's pleadings sought by a nunc pro tunc order to enlarge the trial court's original judgment and to change the custody of the child for a part of the time by allowing either appellee or his parents, who were not parties to the original suit and not therefore awarded any rights or privileges therein, to have custody of the child for a part of the time, which is not authorized by law under a nunc pro tunc order and which is, in fact, contrary to law unless changed conditions have been pleaded. She further alleged that the original judgment in the divorce action was res adjudicata.

Appellee's motion for a nunc pro tunc order was heard by the trial court without a jury on October 7, 1949. Appellant's exceptions and plea of jurisdiction were overruled by the trial court and appellee's motion was sustained. The trial court entered an order attempting to change the original judgment entered by Judge Welch by authorizing and allowing appellee, Eugene Gordon Conley, or his father, C. G. Conley, or his mother, Lillian Conley, the paternal grandparents of the child, the privilege, in effect, of taking physical possession of the child and keeping it during the hours set forth in the original judgment which authorized appellee only to visit the said child. Appellant perfected her appeal from such a nunc pro tunc order and predicates the same upon several points of error presented here consistently with her pleadings previously herein set out.

At the hearing on appellee's said motion there was evidence to the effect that the trial judge (Welch) of the divorce action, for some reason not disclosed by the record, thereafter expressed to the clerk of the trial court some dissatisfaction with the original judgment rendered in the case without divulging in what respects he was not satisfied with it. The record further reveals that thereafter on or about July 20, 1949, the said trial judge, while in his sickroom where he was quite ill, expressed to his brother, D. A. Welch, some dissatisfaction with the visitation privileges of the said judgment without divulging, so far as the record reveals, why he was concerned about the matter and the evidence reveals that he said he would make a change in the said judgment as soon as he was able. The record reveals that the trial judge (Owens) who heard the motion here presented and who examined some of the witnesses endeavored to determine the issues there raised by ascertaining and following as best he could the intentions of the deceased trial judge expressed after the original judgment had been rendered and after the expiration of the term of court at which the original judgment was rendered. The paramount question to be determined, however, is not the kind of judgment that Judge Welch may have later said he intended to render but it is the terms and provisions of the judgment he actually did render at the time he heard and disposed of the original case. In discussing a similar proposal to change a judgment by a nunc pro tunc order Justice Phillips in speaking for the Supreme Court said in the case of Coleman v. Zapp, 105 Tex. 491, 151 S.W. 1040, 1041, that: "The inquiry under it is not what judgment might or ought to have been rendered, but only what judgment was rendered; and such is the sole issue to be determined." The court there further held that the judgment of the court is the decree pronounced by it; the rendition is the judicial act by which the court settles and declares the decision of the law governing the matters at issue; that the entry of a judgment is a ministerial act of recording the same as evidence of a judicial pronouncement; that a court should see that its records speak the truth in recording judgments and that a court has a right at a subsequent term thereof to correct clerical errors or mistakes by nunc pro tunc proceedings and make them speak

the truth; that the purpose of such a proceeding is only to have the records speak the truth and must not assert or try to enforce any new rights between the parties; that such a procedure is powerless to reopen the controversy which had been previously closed and sealed by the judgment pronounced and rendered by the court and it should make no attempt to reopen the issues; that, if an erroneous judgment be corrected by nunc pro tunc proceedings, the status of the parties and their relative rights, as decreed and fixed by the judgment pronounced and rendered by the court, remain the same and are not in any sense adjudicated anew. That case has since been many times cited. Both parties in the case at bar cite it, quote from it and rely on it. A party seeking to correct the record of a judgment by nunc pro tunc proceedings has the burden of showing that the record does not speak the truth. Mallory v. Mantius, Tex.Civ.App., 174 S.W. 692. Such a party must first plead that the purported judgment entered was not the judgment in every detail that was pronounced and rendered and point out the error committed. In the case at bar appellee does not plead that the original judgment entered was not pronounced and rendered by Judge Welch who heard the case and rendered judgment. He does not allege that one judgment was rendered and a different purported judgment was entered upon the court Minutes. He merely alleges, in effect, that the trial court inadvertently entered the judgment that was rendered and that Judge Welch later said the judgment entered was not what he intended to render. Nowhere does appellee allege that the original judgment entered in the divorce action, or any part of it, was not pronounced and rendered by Judge Welch. For that reason exceptions were levelled at appellee's pleadings by appellant. Before appellee was entitled to the relief sought, he was charged with the burden of proving that the original judgment entered was not the same in all of its parts as the one pronounced or rendered by Judge Welch, but appellee did not attempt to prove that the original judgment entered was not pronounced or rendered by Judge Welch. He

did seek to prove that Judge Welch later said the judgment entered was not the one he intended to render. On the contrary, appellant offered positive proof to the effect that the original judgment entered was the same judgment in all of its parts that was "pronounced and rendered in this case" by Judge Welch on May 27, 1949. Such testimony was not denied and no other witness testified concerning that issue which is the controlling issue in this case, except that the witness Bell said he did not remember hearing such a pronouncement. The record reveals that the original judgment entered in this case was prepared before the trial by appellant's counsel, Honorable Jim W. Sowell, who gave a copy of it to appellee's counsel, Honorable O. L. Bell, one or two days before the trial. The record reveals that appellee's counsel read it and showed it to appellee's father before the trial and no objections were made about it or any of its contents. The said counsel for both parties attended and represented the parties, respectively, in the original trial as well as in this hearing and both attorneys testified at this hearing and were the only witnesses heard who attempted to testify about what happened at the original trial. The witness Sowell testified that his client, appellant here, was the only witness heard at the divorce trial; that after the evidence closed he then presented the drawn judgment to Judge Welch who then, at the conclusion of the trial, pronounced, rendered and signed the judgment as it was and such was entered in the records. The record further reveals that the entries made on the trial court's docket of date May 27, 1949, were as follows:

"O. L. Bell appointed Guardian Ad Litem to represent the Defendant

"The Plaintiff granted a divorce as prayed for, and the Plaintiff to have the care, custody and control of the minor child, and the Defendant to pay into Court the sum of $40.00 per month".

The record likewise reveals that Judge Welch later said he did not read the judgment before signing it as he thought everything had been agreed upon between the parties. The attorneys, appellant and ap-

pellee's father had all read the judgment before the trial and appellee was not there or he could have read it. Judge Welch was justified in assuming that the parties had reached an agreement upon all of the issues and especially those concerning the best interest of the child. The record before us does not, in fact, reflect any controversy between the parties. At any rate, the instrument signed by Judge Welch became his judgment when he pronounced its contents and signed it. Under the record, Judge Welch never at any time sought to change or revoke the judgment or any part of it. It is not contended here that Judge Welch signed the judgment by mistake, that is, thinking he was signing some other kind of an instrument. However, the Commission of Appeals said in a very similar case:

"It is not contended that he signed his name thereto by mistake. There may have been a 'mistake of the court in its rendition, whereby an improper judgment was rendered,' but nevertheless it was a judicial act. * * *

"The most that can be said in favor of defendant in error is that a judgment had been entered against him by mistake."

Love v. State Bank & Trust Co. of San Antonio, 126 Tex. 591, 90 S.W.2d 819, 821. The court there held that the signing of a judgment by mistake could be corrected after the expiration of the term of court only by a separate suit filed in the nature of a bill of review.

In the case of Finnigan-Brown Co. v. Escobar, Tex.Civ.App., 192 S.W. 256, 258, the court held that: "The purpose of a nunc pro tunc entry and its only legitimate function is to correctly evidence upon the records of the court a judgment, decree, or order actually made by it, but which for some reason had not been entered of record at the proper time. A judgment nunc pro tunc should not be entered unless some proper and sufficient evidence be adduced to show that the court had in fact pronounced or rendered the judgment which it is the purpose of the nunc pro tunc entry to correctly evidence."

The Commission of Appeals held in the case of Arrington v. McDaniel, 119 Tex. 148, 25 S.W.2d 295, 298, that:

"It is the settled rule of law in this state that a court rendering a judgment may correct a clerical but not a judicial error after the term in which the judgment was rendered has expired. * * *

"The decisions of the courts of this state also hold that a court may not correct its judgment after the term in which the judgment was rendered, except where the judgment as entered on the records of the court is not the judgment rendered by the court."

The foregoing rules of law are very pertinent in determining the controlling issue here presented.

While appellee sought and was, in effect, awarded for himself and his parents by the trial court part time custody of the child, he urges in a cross-assignment a liberal construction of the word "visitation" and a liberal use of its application in a case such as this if he be otherwise in error about the facts and the law governing such in this case. It seems from the record that any differences of opinion between the parties that may have arisen concerns the right of visitation of the child and not the right of its custody. However, the record does not reveal when nor why the question of visitation became an issue. Neither does it reveal any conflict or bad feeling between the parties about anything. The record does not disclose where any of the parties live, what any of them do, the ages or state of health of appellee's parents, the care and environment they would be able to provide for the child during the time they may have possession of it and few other facts that would enable a court to determine what would be best for the child. Appellee testified at the hearing on October 7, 1949, about his affection for the child, how he was interested in it, and that it was then approximately ten months and eight days old. The $40.00 per month for its support had been consistently paid into the treasury of the court. His father, C. G. Conley, also testified as did other witnesses but there is no evidence reflecting any difficulty

about the visitation hours set out in the trial court's original judgment. No evidence was given showing any refusal to permit visitation of the child at any time by anybody. The evidence does not reflect that appellee or his parents were denied the privilege at any time of taking physical possession of the child and keeping it during the visitation hours set out in the original judgment or at any other time. However, it may be safely presumed that the average mother would feel the need of keeping constant watch and continuous supervisory control over the care and needs of an infant of such tender age and would not want its general routine disturbed by allowing others to take it away for several hours or for a day at a time. According to the testimony of the child's father it was only about six months old when its custody was awarded to its mother on May 27, 1949, with the approval of its father. Judge Welch then found the child's mother a fit and proper person to have its custody and further found that such would be for the best interest of the child. Such is shown by the judgment and supported by the entries made on the trial court's docket. The record does not reveal whether or not at the time the award was made the infant involved in this litigation was being fed in the natural way or by artificial feeding. But such is not material since it is a matter of common knowledge that an infant of such tender years must learn to form its habits and in doing so it needs the constant care and attention of its mother until it is several years old. To interrupt that constant motherly care and supervision of the routine of such an infant for even a few hours may be detrimental to the child. The matter of reasonable visitation of a minor child by those who do not have its care and custody depends upon the child's age, health and other surrounding conditions and circumstances. The person who is charged with its care and custody must be given some discretion in the matter and such necessary right of discretion should be recognized by others, even though they love the child and are interested in its welfare also. However, the person who is given such discretionary powers should respect the privileges of others insofar as is reasonably possible and should not abuse the privileges vested in himself or herself by the court in dealing with other close relatives who are likewise interested in the child. The child's best interest is the paramount issue in every legal controversy in the courts about it. The interests of parents and others are wholly secondary when such conflict with the best interest of a child, whose rights and privileges must be zealously safeguarded by the courts when they are in litigation. Usually the child suffers eventually at most more than any of the litigants when its best interest is embroiled in litigation by those who love it the most. As this child grows older it is possible that a more liberal interpretation can and should be given the visitation privileges set out in the original judgment rendered in this case.

■ The purported amended order of the trial court from which appellant has appealed in this action is more than a ministerial act in that it attempts to reopen the controversy, enlarge the original judgment, award rights to parties not involved or even mentioned in the original judgment, thus attempting to change the status of the parties in the original suit and their relative rights in violation of the rules governing such matters as they are announced by Judge Phillips in the case of Coleman v. Zapp, supra, cited and relied upon by all parties in this case. In the case of Huggins v. Johnston, 3 S.W.2d 937, affirmed 120 Tex. 21, 35 S.W.2d 688, the Court of Civil Appeals held that rights not sought or given in the original suit could not be granted through nunc pro tunc proceedings. Under the record in this case, the trial court was not authorized by law to award any rights or privileges to appellee's parents, C. G. Conley and wife Lillian Conley, who were not parties to the original suit.

■ For the reasons stated it is our opinion that appellee's pleadings were subject to exceptions and that he failed to discharge the burden of pleading and proving his grounds for relief sought. It is our opinion further that if any error might have been committed by the trial court in rendering the original judgment such was

not a clerical error but it was a judicial error and it could not be amended by nunc pro tunc proceedings. Jones v. Bass, Tex. Com.App., 49 S.W.2d 723; Miller v. Texas Life Ins. Co., Tex.Civ.App., 123 SW.2d 756; Collins v Davenport, Tex.Civ.App., 192 S.W.2d 291; Bridgman v. Moore, Tex. Civ.App., 206 S.W.2d 871.

We therefore conclude that the judgment of the trial court in this action and particularly its purported amended order should be reversed and that judgment should be here rendered denying appellee the relief sought, thus leaving the original judgment entered in this case undisturbed, effective and in full force and it is so ordered.