The COMMISSIONERS' COURT OF TARRANT COUNTY et al., Appellants,

v.

Mrs. R. L. EMERSON et al., Appellees.

No. 17017.

Court of Civil Appeals of Texas.

Fort Worth.

May 9, 1969.

Rehearing Denied June 13, 1969.

**890**

Stone, Tilley, Parker, Snakard, Law & Brown, and G. W. Parker, Jr., Thos. H. Law, and W. Terry Gardner, Frank Coffey, Dist. Atty., Fort Worth, McCall, Parkhurst & Horton, Dallas, for appellants.

Simon & Simon, and Henry W. Simon, Jr., Fort Worth, for appellees.

Crawford C. Martin, Atty. Gen., of Texas, and John W. Fainter, Jr., Asst. Atty. Gen., Austin, amici curiae.

## OPINION

LANGDON, Justice.

The question on this appeal is whether or not a nunc pro tunc judgment signed and entered by the court on August 22, 1968 (after the court had lost jurisdiction of the case) is void because it attempted to correct a judicial error rather than a clerical error contained in the court's previous judgment of July 15, 1968.

We are of the opinion and hold that the nunc pro tunc judgment was void and should be set aside.

The parties will be referred to as in the trial court, i. e., appellants as defendants and the appellees as plaintiffs.

On June 17, 1968, Tarrant County, acting through its Commissioners' Court, entered an order authorizing the issuance of Tarrant County Parking Station Revenue Bonds, Series 1968, in the amount of $2,000,000.00, pursuant to Article 2372d–4, Vernon's Ann.Civ.St.

On June 17, 1968, Mrs. R. L. Emerson, et al., plaintiffs, filed their original petition, the pertinent portion of which read:

"This suit is filed under the provisions of the Uniform Declaratory Judgments Act (Art. 2524–1, R.C.S. of Texas), and * * * this suit is to have these rights, status and legal relations construed and determined and the illegality of the acts and threatened acts of the Defendants declared and determined and to have these acts declared to be unauthorized and void, and this suit is also for a Temporary Restraining Order, Temporary Injunction and a Permanent Injunction, enjoining and restraining the Defendants, * * * from performing the agreement * * * and enjoining the threatened issuance and sale of revenue bonds, * * *."

On June 17, 1968, the "Judge's fiat" provided in part as follows: " * * * the said Application for Temporary In-

junction * * * is hereby set for hearing * * * for 9:00 o'clock a. m., on the 8th day of July, 1968."

On July 2, 1968, defendants, through the Attorney General of the State of Texas, filed their general denial to Plaintiffs' Original Petition. On July 8, 1968, defendants, Tarrant County and the Commissioners' Court of Tarrant County, filed a Motion for Summary Judgment, the pertinent portions of which read:

"* * * that after hearing the court enter judgment for the defendant that the contemplated issue and sale of revenue bonds is not illegal, unauthorized, and void; that any injunction, if any, in effect, at that time against the defendants be dissolved; and that all costs of suit be charged against the plaintiff. * * *"

It is clear from the pleadings that the plaintiffs were seeking a declaration that the acts and threatened acts of the defendants were illegal, unauthorized and void whereas the defendants in their motion for summary judgment were seeking a holding to the contrary.

On July 8, 1968, appellees' application for temporary injunction and appellants' motion for summary judgment were heard before the Court at which time testimony was taken and evidence was introduced.

After all testimony and evidence from both sides had been presented to the Court the following colloquy between the Court and the attorneys occurred:

"THE COURT: All right. Now, gentlemen, let me say this, as I indicated earlier I have, I think and hope, *pretty thoroughly read this entire trial,* and I've read the *first Pleadings filed by the Plaintiff* earlier and then today read *the Pleadings filed by the Defendant along with all of these exhibits.* I am fairly familiar, I think, with the *issues* involved, * * *.

"I want some oral arguments from each of you. I might say this that I expect to be in a position to *rule on this matter* when you conclude. * * *

"THE COURT: — In other words, if it is found that it was the intent of the Legislature to permit the County to mortgage that property, do you agree that that is sufficient; that the determining factor is the intent of the Legislature, in other words?

"MR. SIMON: * * * but I certainly do agree with the Court that the construction of this Statute as to whether or not it included this specific power to mortgage to secure the Revenue Bonds is important. After all, the Statute says how the Revenue Bonds are to be paid, and if it be construed that the Statute really should have said, and was intended to say that they were to be secured by a mortgage, if that is what they really intended to do, *then I think that does dispose of one of the issues."* (Emphasis ours.)

Immediately following the arguments of counsel for both sides the Court announced its decision from the bench, on July 8, 1968, precisely as follows:

"Here is my decision on this thing, as is obvious, and I am assuming from beginning that this case will go on Appeal, and I am not at all sure that it shouldn't. It is a serious and important, and not an easy question.

"My best judgment after reviewing it prior to today's hearing and after listening as carefully as I can this afternoon is this:

"I think the County does have the power by implication, at least, to condemn this property if in the County's opinion it is necessary to provide parking for the Convention Center. Whether I agree with their methods or reasoning is totally irrelevant. I may or may not, that means nothing whether I do or not.

"I think also they have the power to issue the Revenue Bonds as provided in Article 2372–d–4.

"I also think, and this is the one that has given me the most problem, as I have indicated, that while this is an extremely poorly worded Statute, *I think the intent is to grant the power to mortgage to secure payment of the Bonds, I so hold.* But, it's not without some difficulty that I find the legislative intent, because I think that it is difficult to dig out. *That will be the judgment of the Court, gentlemen."* (Emphasis ours.)

On July 8, 1968, after the Court had pronounced its judgment in the language above set forth the following dialogue between the Court and the attorneys is recorded:

"MR. MORGAN: Our Motion for Summary Judgment then will be granted?

"THE COURT: You take your pick, Mr. Morgan, that's the judgment of the Court.

"MR. MORGAN: We will accept the judgment of the Court.

"THE COURT: All right.

"MR. FAINTER: Your Honor, at this time may I move to dismiss the Attorney General and the Comptroller of Public Accounts, Parties Defendants in this lawsuit.

"THE COURT: Is there any objection to that dismissal?

"MR. SIMON: As I understand, what John (Fainter) has said is that there would be no further action taken until the Final Order in this matter—

"MR. FAINTER:—We so—in the Order dismissing us, we would be happy to have it in there that we will not approve Bonds until such time.

"THE COURT: It is a matter of Record now, it is stipulated in Open Court. So with that understanding, those two parties are dismissed."

The notation on the court's docket sheet reads: "7–8–68 Order Dismissing Crawford C. Martin & Robert S. Calvert."

The stipulation above referred to by the Court could only mean that the bonds in question would not be approved or registered until the judgment became final by operation of law or was finalized on appeal.

On July 15, 1968, the judgment which the court had pronounced from the bench on July 8, 1968, was signed and entered by the Court after counsel for the plaintiffs had approved it as to form. The judgment of July 15, 1968, reads:

"On July 8, 1968, came to be heard the plaintiffs' application for a Temporary Injunction to restrain each defendant from taking any action toward obtaining land from the plaintiffs, either by purchase or by condemnation, and from taking any action toward obtaining funds for the construction and operation of a parking station, in the vicinity of the Tarrant County Convention Center, on property which presently is partly owned by Tarrant County and which presently is partly owned by the plaintiffs, *and came to be heard the plaintiffs' request for a declaratory judgment that the actions of the defendants complained of by the plaintiffs be declared unauthorized and void,* and that the rights, status, and legal relations of the plaintiffs be construed and determined. Having heard the evidence and argument presented by the parties, *it is the judgment of this Court that the plaintiffs' application for temporary injunction be denied. It is further the judgment of this Court that Tarrant County has the authority to condemn privately-owned land,* if necessary, for the purpose of construction and operating a parking station in the vicinity of the Tarrant County Convention Center; *that Tarrant County has the authority to issue and sell revenue bonds* for the purpose of financing such a parking station without a vote of the people authorizing such bonds; and *that Tarrant County has the authority to mortgage its property, including property previously purchased with*

*funds obtained from general obligation bonds,* for the purpose of securing such revenue bonds. *It is also the judgment of this Court* that all costs of this proceeding be levied against the plaintiffs." The judgment was signed by the Court and entered of record. (Emphasis ours.)

The notation appearing on the court's docket sheet reads:

"7–15–68 Judgment per decree on file."

No appeal was taken from the judgment of July 15, 1968, by either the plaintiffs or the defendants although the Court on at least two occasions expressed the opinion that an appeal would result.

On August 21, 1968, in reliance upon the finality of the July 15, 1968, judgment and in conformity with the stipulation of July 8, 1968, the Attorney General of the State of Texas approved the validity of the bonds and the Comptroller of Public Accounts of the State of Texas registered them, all in accordance with Art. 2372d–4, supra. The bonds are now "incontestible" pursuant to specific provisions of said statute.

The Commissioners' Court of Tarrant County in reliance upon said July 15, 1968, judgment and the approval and registration of said bonds sold and delivered them to defendant, First Southwest Company, an investment banking firm, which resold most of them to numerous parties within and without the State of Texas.

Although, as previously stated, the plaintiffs did not appeal from the July 15, 1968, judgment they did on August 22, 1968, more than thirty (30) days after its rendition, file an application for a judgment nunc pro tunc. On the same date, August 22, 1968, a hearing was held by the trial court. Again evidence was heard and testimony was taken and the court entered an "order" reciting the action taken and finding a necessity to enter a judgment nunc pro tunc. A "Judgment" purporting to be a judgment nunc pro tunc was signed by the court on August 22, 1968, which in effect nullified the previous judgment of July 15, 1968. The nunc pro tunc judgment in essence was to the effect that the hearing (trial) of July 8, 1968, was limited to plaintiffs' application for a temporary injunction and that the previous judgment was limited solely to a denial of such relief.

The defendants' motion to vacate the judgment nunc pro tunc was denied by the court on October 16, 1968, and it is from this order that defendants have perfected their appeal.

In a hearing on a motion for judgment nunc pro tunc there are but two issues, i. e., (I) Was a judgment rendered? (II) What did the judgment provide? McDonald Texas Civil Practice, Vol. 4 (Judgments), § 17.07–C, "Rendition or Entry Nunc Pro Tunc."

Under the record in this case it is apparent that a judgment was rendered and precisely what it provided.

The evidence establishing that a judgment was rendered and what it provided is derived from the verbatim account of the court's announcement from the bench on July 8, 1968, after a full hearing was had and arguments were concluded.

"The controversy may not be re-opened on its merits in the course of determining a motion for the entry of a judgment nunc pro tunc, and new issues can not be litigated. The issue is not what judgment should have been rendered, but what judgment in fact was rendered. The motion may be resisted upon the ground that the court lacked jurisdiction, but not upon the ground that the decree was incorrect." McDonald Texas Civil Practice, Vol. 4, p. 1326, § 17.07, Sub. II, and insert at p. 22 in pocket parts of same text. See also Conley v. Conley, 229 S.W.2d 926 (Amarillo Civ. App., 1950, error dismissed); Coleman v. Zapp, 105 Tex. 491, 151 S.W. 1040 (1912);

Finlay v. Jones, 435 S.W.2d 136 (Tex.Sup., 1968).

■ Mere lapse of time (delay) will not bar the right to urge a motion for judgment nunc pro tunc. However, if in addition to delay there are circumstances which create interests in third parties who have acted in good faith the motion may be defeated by the doctrine of laches. See Coleman v. Zapp, supra.

In Vol. 4 of McDonald Texas Civil Practice (Judgments), § 17.08–D, "Correction of Clerical Errors in Entry," p. 1328, it is said, "The statement of the rule implies its converse statement: the court can properly act only when the minutes do not accurately reflect the decree or order actually rendered. In the guise of correcting a record, the court may not judicially re-examine and modify an entry which correctly recorded the decision made. It is evident that judicial errors may occur with reference to most, if not all, of the examples noted as typical of errors which may properly be corrected. But if the recorded judgment correctly states the decision which the court rendered, the fact that the judgment was inadvertent or mistaken, or did not express the court's true intent, can, not justify correction under these rules." See authorities cited under § 17.08–D and Finlay v. Jones, supra.

In order to clearly illustrate that the judgment signed by the court on July 15, 1968, correctly stated the decision announced by it on July 8, 1968, the pertinent portions of each are set forth verbatim below for comparison:

### DECISION ANNOUNCED FROM BENCH—JULY 8, 1968

"My best judgment after reviewing it prior to today's hearing and after listening as carefully as I can this afternoon is this:

"I think the County does have the power by implication, at least, to condemn this property if in the County's opinion it is necessary to provide parking for the Convention Center.

"I think also they have the power to issue the Revenue Bonds as provided in Article 2372d–4.

"I also think, and this is the one that has given me the most problem, as I have indicated, that while this is an extremely poorly worded Statute, I think the intent is to grant the power to mortgage to secure payment of the Bonds, I so hold. * * * That will be the judgment of the Court, gentlemen."

### JUDGMENT SIGNED BY THE COURT—JULY 15, 1968

"It is further the judgment of this Court that

"Tarrant County has the authority to condemn privately-owned land, if necessary, for the purpose of constructing and operating a parking station in the vicinity of the Tarrant County Convention Center.

" * * * that Tarrant County has the authority to issue and sell revenue bonds for the purpose of financing such a parking station without a vote of the people authorizing such bonds; * * *.

" * * * and that Tarrant County has the authority to mortgage its property, including property previously purchased with funds obtained from general obligation bonds, for the purpose of securing such revenue bonds. It is also the judgment of this Court that all costs of this proceeding be levied against the plaintiffs."

It appears to us that the judgment of July 15, 1968, which was approved as to form by counsel for plaintiffs and thereafter signed by the court and entered of record tracks the language employed by the court in its announced judgment of July 8, 1968. Coleman v. Zapp, supra, and 4 McDonald Texas Civil Practice, "Judgments," § 17.08, supra.

At this point it seems that a brief summary of the contentions of the parties as reflected by their pleadings and the record as a whole and some conclusions based thereon are in order.

(1) The plaintiffs' suit was one, "to have these rights, status and legal relations construed and determined," and to have the threatened acts of the defendants declared illegal, unauthorized and void and such acts temporarily enjoined.

(2) The defendants sought a summary judgment holding that action contemplated by them was not illegal, unauthorized and void and thus should not be temporarily enjoined.

It is obvious that before ordering a temporary injunction the court was required to find that the threatened acts of the defendants were illegal, unauthorized and void under the Statute. The Court found to the contrary and so held and thus denied the injunctive relief sought by the plaintiffs.

It is also quite clear that the court would encounter considerable difficulty in considering and ruling upon either the Summary or Declaratory Judgment aspects of the case without considering and ruling upon both because to deny either would be to sustain the other. The Court by its pronouncement on July 8, 1968, had obviously overruled the plaintiffs' motion for Declaratory Judgment and made declarations consistent with those sought by Defendants' Motion for Summary Judgment.

The ruling prompted Mr. Morgan, attorney for the defendants, to ask, "Our Motion For Summary Judgment then will be granted?" and the Court's answer, "You take your pick, Mr. Morgan, that's the judgment of the Court."

Thus for purposes of the Judgment which had been announced by the Court it made no difference whether it was in the form of a Declaratory Judgment or a Summary Judgment. It was evident that the Court made a full declaration to the effect that the County, under the Statute, had authority to act and that the action contemplated by it was not illegal, unauthorized or void. It would necessarily follow that the defendants would not be enjoined from the performance of acts they were authorized to perform.

It will be noted from an examination of the court's July 8, 1968, pronouncement that it did not contain a single reference to a temporary injunction, a Declaratory Judgment or a Summary Judgment although it is conceded that the hearing of July 8, 1968, involved the injunctive and summary aspects of the case. We are unable to find anything in the record to indicate that the Declaratory Judgment aspects of the case were not before the court. When the judgment was approved by counsel for the plaintiffs and signed by the court it recited, "and came to be heard the plaintiffs' request for a declaratory judgment. * * *" It made no reference to defendants' motion for summary judgment.

The appellees argue that, "Prior to signing to indicate approval of the proposed Judgment, Simon contacted Judge Jordan by phone and was informed by the Court that the Order was an Order Denying the Application for Temporary Injunction."

In reading and construing the instrument signed by the Judge on July 15, 1968, and labeled by him as a judgment rather than an "order" it is obvious that the "Application for Temporary Injunction" was denied. It is also clear that the court's judgment went much further than this and clearly defined and declared the power and authority derived by the County from the statute in question.

Appellees further contend that, "The Transcript of Proceedings of July 8, 1968, indicates, in several instances, the nature of the proceeding—that it was a hearing on temporary injunction."

The two instances referred to are as follows:

"THE COURT:—Is it relevant to the *issues* before this Court at this time?

"MR. SIMON: Not if it does not stand in the way of the claim for relief on temporary injunction." (Emphasis ours.)

The above remarks concerned whether or not it was being contended that appellees (plaintiffs) had failed to exhaust their administrative remedies.

In the second instance the court reporter was requested to "mark this as Plaintiffs' (Temporary Injunction) Exhibit No. 1."

We find no significance in these references and cannot agree with the plaintiffs' conclusion that, "There is nothing whatsoever in the record to indicate that the hearing of July 8th was on any matter other than the temporary injunction, * *."

On the contrary, we find nothing whatever in the record to indicate that the hearing of July 8th was limited in any manner. The appellees concede that, "in addition, by agreement, the Court considered Defendants' Motion for Summary Judgment."

Additional to the above excerpts which are relied upon by the appellees to support their position the statement of facts contain the following language of the Court indicating that the July 8th hearing was not limited to the temporary injunction as contended by appellees:

"THE COURT: * * * I think we all understand that, my decision is going to be important *as the case may or may not be Appealed,* of course, there is a Record being taken, * * * because frankly I *want to hear what I can in order to make a correct determination. * * * I do want to hear some of this, anything that might help me arrive at a correct decision,* but at

the same time we will have to follow the Rules of Evidence, and I don't think that a lot of that testimony *is relevant to the issues here.* * * * I realize that some of it may be irrelevant, and hence not admissible, but *this is a trial to the Court, there is no Jury here,* and as you are well aware, *some times the Court in a non-jury trial,* will hear matters that aren't strictly admissible, * * *." (Emphasis ours.)

The plaintiffs argue that the "fiat" signed by the Court on June 17, 1968, setting a hearing on the application for temporary injunction conclusively demonstrated that the case was not set down for a conventional trial on the merits in the absence of an agreement between the parties. Under the record in this case the argument is untenable and the cases cited have no application.

When a judgment disposes of all parties and all issues, its finality is not dependent upon the stage of the proceeding at which it is rendered or upon its correctness. There are no issues remaining in the case at bar as all were disposed of by the July 15, 1968, judgment.

A judgment which disposes of all issues and all parties ends the litigation and until it is vacated by some effective order a subsequent purported judgment in the same cause is a nullity. Mullins v. Thomas, 136 Tex. 215, 150 S.W.2d 83 (1941); Kibby v. Leon, 241 S.W. 1064 (Galveston Civ.App., 1922, no writ hist.); Brewster v. Norfleet, 3 Tex.Civ.App. 103, 22 S.W. 226 (1893, no writ hist.). McDonald Texas Civil Practice, Vol. 4, p. 1314, § 17.04.

A judgment is rendered when the court announces a decision with the intention that the case be thereby disposed of. This the court did.

It is elementary that a judgment nunc pro tunc may be entered only to correct clerical errors and may not be entered to correct judicial errors. Finlay v. Jones,

435 S.W.2d 136 (Tex.Sup., 1968), 33 Tex. Jur.2d 521, "Judgments", § 29.

The judgment entered on July 15, 1968, especially when viewed in light of the trial court's remarks, is clearly a final judgment on the merits. The substance of the judgment and not the form is significant and no particular wording or phraseology is required. 33 Tex.Jur.2d 526, "Judgments", § 33. See cases cited therein.

The judgment nunc pro tunc rendered by the trial court on August 22, 1968, is hereby set aside and vacated.

RENFRO, J., concurring.